IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 20-10462-G
United States District Court, Southern District of Florida
Case No.: 0:18-cv-62488-RAR

MARGUERITE T. MARTIN,

Plaintiff/Appellant,

v.

TELEPERFORMANCE, INC.,

Defendant/Appellee.

## ANSWER BRIEF OF APPELLEE

KRISTEN M. FIORE, B.C.S. (25766)
**AKERMAN LLP**
201 East Park Ave., Suite 300
Tallahassee, Florida 32301
Telephone:   (850) 224-9634
Facsimile:    (850) 222-0103
kristen.fiore@akerman.com

MELANIE KALMANSON (123855)
**AKERMAN LLP**
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone:   (904) 798-3700
Facsimile:    (904) 798-3730
melanie.kalmanson@akerman.com

ERIC A. GORDON (71341)
MELISSA S. ZINKIL (653713)
**AKERMAN LLP**
777 South Flagler Drive, Suite 1100
West Tower
West Palm Beach, Florida 33401
Telephone:   (561) 671-3675
Facsimile:    (561) 659-6313
eric.gordon@akerman.com
melissa.zinkil@akerman.com

*Attorneys for Appellee*

USCA Case No. 20-10462-G
*Marguerite T. Martin v. Teleperformance, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE PURSUANT TO FRAP 26.1 AND 11TH CIR. R. 26.1-1

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, Appellee TPUSA, Inc.[1], by and through its undersigned counsel, hereby discloses the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock:

1.    Akerman LLP (Counsel for Appellee)

2.    Fiore, Kristen M. (Counsel for Appellee)

3.    Gordon, Eric A. (Counsel for Appellee)

4.    Kalmanson, Melanie (Counsel for Appellee)

5.    Martin, Marguerite T. (Pro Se Appellant)

6.    Ruiz, II, Honorable Rodolfo A. (United States District Judge)

7.    Seltzer, Honorable Barry S. (United States Magistrate Judge)

8.    Teleperformance Group, Inc. (Appellee TPUSA, Inc.'s corporate parent)

---

[1]   "Teleperformance, Inc." is not an existing legal entity. At all relevant times, Appellant Marguerite T. Martin was employed by TPUSA, Inc., which company does business under the name "Teleperformance" and/or "Teleperformance USA."

C-1

USCA Case No. 20-10462-G
*Marguerite T. Martin v. Teleperformance, Inc.*

9.    Teleperformance SE (Teleperformance Group, Inc.'s corporate parent and Appellee TPUSA, Inc.'s indirect parent)

10.    TPUSA, Inc. (Appellee/Appellant's former employer)

11.    Zinkil, Melissa S. (Counsel for Appellee)

TPUSA, Inc. is a Delaware corporation. Teleperformance Group, Inc., also a Delaware corporation, is the direct parent and sole stockholder of TPUSA, Inc. Teleperformance SE, a French company publicly traded on the NYSE Euronext Market (TEP), is the direct parent and sole stockholder of Teleperformance Group, Inc. Teleperformance SE is thus the indirect parent of TPUSA, Inc. No publicly traded corporation directly owns 10% or more of the stock of TPUSA, Inc.

C-2

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is not necessary in this case. This case involves straightforward legal issues that are adequately addressed in the parties' briefs.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
   CORPORATE DISCLOSURE STATEMENT ................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE...................................................................................2

   *Factual and Procedural Background* ...................................................................2

   *Standard of Review* .............................................................................................4

SUMMARY OF THE ARGUMENT ........................................................................5

ARGUMENT ............................................................................................................6

   I.    **APPELLANT'S BRIEF FAILS TO ARTICULATE ANY
         COLORABLE ARGUMENT JUSTIFYING REVERSAL
         OF THE ORDER BELOW.**................................................................6

   II.   **THE DISTRICT COURT PROPERLY GRANTED
         TPUSA'S MOTION FOR SUMMARY FINAL
         JUDGMENT AND DENIED APPELLANT'S MOTION
         FOR SUMMARY JUDGMENT.**........................................................7

CONCLUSION.......................................................................................................12

CERTIFICATE OF COMPLIANCE.......................................................................14

CERTIFICATE OF SERVICE ...............................................................................14

51905195;2

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328 (11th Cir. 2005) ................5

*Carper v. TWC Services, Inc.,* 820 F. Supp. 2d 1339 (11th Cir. 2011)................8, 9

*Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896 (11th Cir. 2012) .............4

*Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379 (11th Cir. 2005)........................4

*Davison v. Huntington Ingalls, Inc.*, 712 F. 3d 884 (5th Cir. 2013)........................6

*Gish v. Thomas*, 516 F.3d 952 (11th Cir. 2008) ........................................4

*Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220 (11th Cir. 1999).............8, 11

*\*LaPier v. Prince George's Cty., Md.*, No. 10-CV-2851 AW, 2011 WL 4501372,

    (D. Md. Sept. 27, 2011) .................................................................9

*\*Militano v. Randstad Professionals US, LP*, No. 14-21285-CIV, 2015 WL 1636115

    (S.D. Fla. Apr. 13, 2015) ..............................................................8

*\*Morris v. Sheehan Buick Pontiac GMC, Inc.*, 517 Fed. App'x 686

    (11th Cir. 2013) ............................................................................4

*Reed v. The Heil Co.*, 206 F.3d 1055 (11th Cir. 2000).....................................4, 8, 9

*Rodriguez-Machado v. Shineski*, 700 F.3d 48 (1st Cir. 2012)..................................6

*Standard v. A.B.E.L. Servs. Inc.*, 161 F. 3d 1318 (11th Cir. 1998) ........................11

*Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199 (11th Cir. 2001) ..............4

## **STATUTES AND CODE PROVISIONS**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332 ...................................................................................1

42 U.S.C. § 12102(2)(a) ........................................................................8

42 U.S.C. § 12102(2)(a)4 ......................................................................9

42 U.S.C. § 12102(2)(b) ........................................................................8

42 U.S.C. § 12102(2)(c) ........................................................................8

42 U.S.C. § 12112(a) .............................................................................7

## **RULES AND REGULATIONS**

11th Cir. R. 26.1-1 ...........................................................................C-1

11th Cir. R. 32-4 ...............................................................................14

29 C.F.R. 1630.2(l) ...........................................................................11

Fed. R. App. P. 26.1 .........................................................................C-1

Fed. R. App. P. 32(a)(5) ...................................................................14

Fed. R. App. P. 32(a)(6) ...................................................................14

Fed. R. App. P. 32(a)(7)(B) ..............................................................14

Fed. R. App. P. 32(f) ........................................................................14

Fed. R. Civ. P. 56(c) ...........................................................................4

iv

## STATEMENT OF JURISDICTION

The District Court had original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as it involved questions arising under a federal statute, the Americans with Disabilities Act ("ADA").  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal from an order and final judgment of a District Court.

## STATEMENT OF THE ISSUES

Whether the District Court properly entered summary judgment in favor of Appellee on Appellant's ADA claim, finding that Plaintiff failed to establish: (i) that she suffered from a "disability" within the meaning of the ADA, (ii) that she had a record of a "disability," and (iii) that she was regarded as "disabled."

## STATEMENT OF THE CASE[2]

*Factual and Procedural Background*

The following excerpt from the District Court's Order on Cross-Motions for Summary Judgment (ECF No. 86, referenced as the "**Order**") summarizes the pertinent facts:

> [Ms. Martin] was employed by [TPUSA] for approximately four months as a customer service representative at a call center in Fort Lauderdale, Florida. During her onboarding process, Plaintiff completed a voluntary questionnaire in which she expressly noted that she did not have "a mental or physical impairment that substantially limit[ed] one or more [of her] major life activities . . . ." Notwithstanding the same, on various occasions [Ms. Martin] informed her customer service coworkers—but not her supervisor—that she suffered from anemia.

> On January 4, 2018, [Ms. Martin] was scheduled to work from 9:00 a.m. to 6:00 p.m. [Ms. Martin] arrived at work to find herself in a security line with thirty to forty coworkers ahead of her. According to [Ms. Martin], while she was standing outside the line, she began to feel cold because the weather was approximately 60-70 degrees that morning. After waiting a few minutes outside, [Ms. Martin] bypassed the line and sought to proceed through security. The security guard at the entry way, Sharill Thompson, directed [Ms. Martin] to return to the end of the line, but [Ms. Martin] refused to do so; instead [Ms. Martin] placed her bag on the security table and walked through the metal detector.

> [Ms. Martin] alleges that after she walked through security, she believed her bag had been checked and thus proceeded to her

---

[2] Appellant Marguerite Martin is referenced as "**Ms. Martin**" and "**Appellant**." Appellee TPUSA, Inc., is referenced as "**TPUSA**." Citations to the record on appeal are by reference to docket entry numbers in the District Court proceeding (e.g., [ECF No. ## at __]). Citations to Appellant's Brief are to the pagination of the docket entry (e.g., "Initial Br. at ___").

workstation. By contrast, [TPUSA] contends that [Ms. Martin] did not allow her bag to be searched, but rather "rushed through the metal detector and reached back behind her to grab her belongings before security officers could complete the search." Once inside the premises, [Ms. Martin] did not request or otherwise seek medical treatment.

Approximately ten minutes later, a security officer approached [Ms. Martin] and told her she needed to have her bag rechecked. While being escorted back to the front of the building to have her bag rechecked, [Ms. Martin] never mentioned her anemia or any medical condition. Plaintiff's bag was rechecked and the security guard on duty prepared an incident report . . . detailing the alleged security breach on the premises—namely that [Ms. Martin] entered the building without her bag being checked. . . .

After reviewing the incident report and video footage of [the incident, TPUSA] decided to terminate [Ms. Martin]. Before [Ms. Martin] was terminated, none of the individuals involved in the termination decision knew [Ms. Martin] had ever been diagnosed with anemia. . . . At the meeting, [Daryl Welch, the Assistant Contact Center Manger] told [Ms. Martin] she was being terminated for a security breach. After she was terminated, [Ms. Martin] told those present at the meeting that she was anemic and that the alleged security breach was related to her anemia because she could not withstand cold temperatures.

[ECF No. 86 at 1-3 (citations omitted)]

Ms. Martin filed suit against TPUSA alleging discrimination pursuant to the ADA. *Id.* at 3-4. The parties filed cross-motions for summary judgment. *Id.* at 4; *see* [ECF Nos. 69, 70]

Upon review, the District Court entered the Order, granting TPUSA's motion for summary judgment [ECF No. 69] and denying Ms. Martin's motion for summary judgment [ECF No. 70]. [ECF No. 86 at 8] The Order determined Ms. Martin could

not "meet the first prong of her *prima facie* case" of discrimination under the ADA—she could not prove "she has a disability as defined by the ADA." *Id.* at 6.

Thereafter, on January 28, 2020, the District Court entered Final Judgment in favor of TPUSA. [ECF 87 at 1] Ms. Martin appealed to this Court.

### Standard of Review

This Court reviews *de novo* a district court's rulings on cross-motions for summary judgment. *See, e.g., Morris v. Sheehan Buick Pontiac GMC, Inc.*, 517 Fed. App'x 686, 687 (11th Cir. 2013) (quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)); *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citing *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)); *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000). In doing so, this Court applies "the same legal standards as the district court and view[s] all facts and reasonable inferences in the light most favorable to the nonmoving party." *Gish*, 516 F.3d at 954 (quoting *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1203 (11th Cir. 2001)).

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the District Court's Order explained, "[t]he

standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion." [ECF No. 86 at 5 (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005))]

## SUMMARY OF THE ARGUMENT

In her initial brief, (which consists of a statement regarding oral argument, a statement of the issues, a statement of the case, a conclusion, and a jurisdictional statement, with absolutely no citations to the record or to relevant legal authority), Ms. Martin presents no argument that could serve to undermine the District Court's thorough and well-reasoned Order, and provides no basis to overturn the Final Judgment entered in favor of TPUSA. Indeed, Ms. Martin fails completely to address the very specific findings made by the District Court in the Order.

The District Court correctly concluded, based upon a comprehensive review of the record evidence, that Ms. Martin could not meet the first prong of a *prima facie* case under the ADA and, therefore, her claim fails as a matter of law. Specifically, while Ms. Martin claims to suffer from anemia, the District Court found that she failed to demonstrate that the alleged impairment substantially limited one or more of her major life activities, as is necessary to establish a "disability" within the meaning of the ADA. In reaching this conclusion, the District Court pointed to Ms. Martin's own deposition testimony, wherein she stated "that her anemia did not impact her ability to perform her role as a customer service representative in any

5

way," and also to the fact that the record was devoid of any evidence "suggesting [Ms. Martin's] other major life activities are impacted in any way by her anemia." [ECF No. 86 at 7]  The District Court also found that Ms. Martin failed to point to any evidence suggesting that she had a record of an impairment that substantially limited one or more life activities or that TPUSA otherwise regarded her as having a qualifying impairment.  [ECF No. 86 at 7]

Ms. Martin fails in her initial brief to point to any error of the District Court in reaching these findings and conclusions.  Accordingly, this Court should affirm the Order.

## ARGUMENT

## I. APPELLANT'S BRIEF FAILS TO ARTICULATE ANY COLORABLE ARGUMENT JUSTIFYING REVERSAL OF THE ORDER BELOW.

In her initial brief, Ms. Martin fails to address the findings and conclusions made by the District Court in the Order.  While suggesting that the District Court did not thoroughly analyze the information presented, nowhere in her initial brief does Ms. Martin point to record evidence establishing that, contrary to the findings of the District Court, her anemia was tantamount to a "disability," that she had a record of a "disability," or that she was "regarded as disabled."  Indeed, Ms. Martin's initial brief is devoid of any citations to record evidence or to any legal authorities establishing an error.  This alone requires affirmance.  *See Davison v. Huntington Ingalls, Inc.*, 712 F. 3d 884, 885-886 (5th Cir. 2013) (granting employer's motion to

dismiss pro se employee's appeal of summary judgment order where employee's initial brief failed to reasonably comply with the Federal Rules of Appellate Procedure in that, among other deficiencies, it was devoid of record citations and failed to "identify the nature of his challenge or its factual and legal underpinnings"); *Rodriguez-Machado v. Shineski*, 700 F.3d 48, 48-50 (1st Cir. 2012) (recognizing that "substantial 'noncompliance' with important 'appellate rules, in and of itself, constitutes sufficient cause to dismiss an appeal'" and dismissing appeal with prejudice where appellant's initial brief offered "no specific record cites to support her version of the facts" and provided "neither the necessary caselaw nor reasoned analysis to support her theories").

## II. THE DISTRICT COURT PROPERLY GRANTED TPUSA'S MOTION FOR SUMMARY FINAL JUDGMENT AND DENIED APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

As the District Court's Order explains, the ADA bars employers from discriminating against "a qualified individual on the basis of disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." [ECF No. 86 at 6 (quoting 42 U.S.C. § 12112(a))] To establish a *prima facie* case of discrimination under the ADA, this Court has explained, a plaintiff must show three things: "(1) [s]he has a disability, (2) [s]he is a 'qualified individual,' which is to say, able to perform the essential functions of the

employment position that [s]he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against [her] because of the disability." *Reed*, 206 F.3d at 1061 (citing *Hillburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)). "An inability to satisfy any one of the above three prongs is fatal to a plaintiff's claim." *Carper v. TWC Services, Inc.,* 820 F. Supp. 2d 1339, 1350 (11th Cir. 2011). Here, the District Court found that Ms. Martin failed to establish the first element of her *prima facie* case, and therefore, that it was unnecessary to consider the second and third, as Ms. Martin's claim failed as a matter of law.

It is axiomatic that to state a claim under the ADA, a plaintiff must first establish the existence of a "disability." *See, e.g.*, *Militano v. Randstad Professionals US, LP*, No. 14-21285-CIV, 2015 WL 1636115, at *17 (S.D. Fla. Apr. 13, 2015) (noting that the threshold to an ADA claim is establishing the existence of a disability within the meaning of the act). "The ADA defines 'disability' as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Carper,* 820 F. Supp. 2d at 1350 (citing 42 U.S.C. 12102(2)(A)-(C)).

This Court has explained that "[a] physical or mental impairment qualifies as a disability under the ADA if it substantially limits a major life activity, such as

8

working." *Reed*, 206 F.3d at 1061 (citing 42 U.S.C. § 12102(2)(A)).  This Court has

further explained that:

> A "substantial limitation" occurs when an individual is
> "[s]ignificantly restricted as to the condition, manner, or
> duration under which [he/she] can perform a particular
> major life activity as compared to the ... average person."
> 29 C.F.R. § 1630.2(j) (2008) The Regulations also instruct
> the court to take into account "(i) The nature and severity
> of the impairment; (ii) The duration or expected duration
> of the impairment; and (iii) The permanent or long term
> impact ... from the impairment." *Id.* at § 1630.2(j)(2).
> These provisions require a substantial limitation on a
> major life activity and exclude individuals with minor
> impairments which merely affect the ability to satisfy the
> singular demands of a particular job, . . . and individuals
> with only temporary impairments . . ..

*Carper,* 820 F. Supp. 2d at 1351.

Here, Ms. Martin alleges that she has anemia, but there is no record evidence

to support a finding that her alleged condition substantially limits one or more of her

major life activities.  Indeed, Ms. Martin admitted at her deposition that her alleged

condition had no impact whatsoever on her ability to perform her job duties.  [ECF

No. 72, Deposition of Marguerite Martin (hereinafter, "Martin Dep.") at 76:19-22,

88:4-7, 91:25-92:3, 100:3-10] *See, e.g.*, *LaPier v. Prince George's Cty., Md.*, No.

10-CV-2851 AW, 2011 WL 4501372, at *5 (D. Md. Sept. 27, 2011) (finding that

despite being "anemic," plaintiff did not suffer from a "disability" given the absence

of evidence that his anemia either interfered with the performance of his job duties

or caused any "substantial limitation").  And, Ms. Martin represents in her initial

9

brief, that any alleged disabling effects of her condition were only "temporary." [Initial Br. at 10]

Further, Ms. Martin testified that she affirmatively represented to TPUSA that she did not have a disability, thereby refuting any claim that she actually had, or even believed she had, an alleged disability and/or that there was a record of her having a disability of which TPUSA was made aware. To be certain, Ms. Martin testified:

> Q: And if you go down to the last one, disabled, mental or physical disability, the question asks, "***Are you a person who has a mental or physical impairment that substantially limits one or more major life activities, who has a record of such impairment or is regarded as having such impairment***?" Do you see that?
>
> A: I do see that.
>
> Q: And then it has two spaces where you can make a checkmark about what applies?
>
> A: Yes.
>
> Q: Do you see that you checked "no?"
>
> A: I did check "no," because ***I do not have a physical disability***.
>
> . . .
>
> Q: I want to go back and make sure --
>
> A: Or a mental disability. ***I do not have a mental or physical disability***.
>
> . . .
>
> Q: Again, I just want a "yes" or "no."· You didn't consider your anemia, which you say you had since March 2017 -- you filled out this form in September 2017. You did not consider your anemia to fit within this here?
>
> A: I did not consider it. I did not consider that. ***Because it's not a***

10

***mental or physical disability***.

[ECF No. 72, Martin Dep. at 84:3-17, 85:7-9, 86:16-23 (emphasis supplied)]  *See*

*Hilburn v. Murata Electronics North America Inc.*, 181 F.3d 1220, 1229 (11th Cir.

1999) (recognizing that to establish a disability based on a record of impairment, the

record must have been available to the employer and, further, must have indicated

that the impairment substantially limited a major life activity).

Moreover, Ms. Martin admitted during her deposition that she never informed

any member of management—not even TPUSA's Human Resources Department—

that she had a medical condition, refuting any allegation that she was otherwise

"regarded as" disabled by her employer.  [ECF No. 72, Martin Dep. at 76:19-22,

88:4-7, 91:25-92:3, 100:3-10] *See Standard v. A.B.E.L. Servs. Inc.*, 161 F. 3d 1318,

1327 n.2 (11th Cir. 1998) (noting that a person is "regarded as" disabled where he

or she: "(1) has an impairment that does not substantially limit a major life activity,

but is treated by an employer as though it does; (2) has an impairment that limits a

major life activity only because of others' attitudes towards the impairment; or (3)

has no impairment whatsoever, but is treated by an employer as having a disability

as recognized by the ADA" (citing 29 C.F.R. 1630.2(l))).

Indeed, Ms. Martin testified that she only informed her manager that she was

allegedly anemic ***after*** the decision to terminate her employment had been made and

***after*** the decision was communicated to her:

11

Q: In response to your saying, I am anemic, what did -- actually, what did you say, I am anemic, in response to?

A: In response to the reason why I had to enter the building.
Q: Was that question asked of you, why you entered the building that way?

A: *He asked me for my badge, and __then__ I said, but I'm anemic*.

Q: Who asked you?

A: The acting manager [Daryl Welch].

Q: *So he asked you for your badge to indicate you being terminated or* --

A: *Yes. And I said -- while I was taking it off, I said, but I'm anemic*
. . . .

[ECF No. 72, Martin Dep. at 103:10-24 (emphasis supplied)]  That TPUSA was not on notice of any alleged condition until after the decision to terminate was made, belies any argument that TPUSA could have regarded her as disabled and, likewise, that TPUSA could have made any decisions affecting Ms. Martin because of an actual or perceived disability.

## **CONCLUSION**

Based on the foregoing, TPUSA respectfully requests that this Court affirm in all respects the District Court's Order on Cross-Motions for Summary Judgment [ECF No. 86] and the resulting Final Judgment. [ECF No. 87]

51905195;2

Respectfully submitted,

/s/ Kristen M. Fiore

KRISTEN M. FIORE, B.C.S. (25766)
**AKERMAN LLP**
201 East Park Ave., Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:   (850) 222-0103
kristen.fiore@akerman.com


MELANIE KALMANSON (123855)
**AKERMAN LLP**
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone:  (904) 798-3700
Facsimile:   (904) 798-3730
melanie.kalmanson@akerman.com

ERIC A. GORDON (71341)
MELISSA S. ZINKIL (653713)
**AKERMAN LLP**
777 South Flagler Drive, Suite 1100
West Tower
West Palm Beach, Florida 33401
Telephone:  (561) 671-3675
Facsimile:   (561) 659-6313
eric.gordon@akerman.com
melissa.zinkil@akerman.com

*Attorneys for Appellee*

13

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 2978 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).   It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 28th, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this case whom are registered through the CM/ECF.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS

51905195;2